**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HERBERT BRYANT III, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>ALL WAYS AUTO TRANSPORT, LLC, an Illinois Limited Liability Company doing business as AW TRANSPORT; and DOES 1 through 100, inclusive,<br><br>      Defendants. | CASE NO.:<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT:**<br><br>1. Truth-in-Leasing-Act Truck Equipment Lease Violations<br>2. Breach of Contract<br>3. Breach of Covenant of Good Faith and Fair Dealing<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

HERBERT BRYANT III ("Plaintiff" or "Mr. Bryant") an individual, demanding a jury trial, on behalf of himself and all other persons similarly situated, hereby alleges based upon personal knowledge as to himself and his own actions, and, as to all other matters, upon information and belief and investigation of counsel, as follows:

## NATURE OF THE ACTION

1.      Deception, abuse, and exploitation of truck drivers is a widely recognized problem that plagues the nation's trucking industry and leaves some truck drivers in financial ruin, or constrained as the modern-day equivalent of indentured servants.[1] The potential for abuse in truck lease agreements is so widespread that the federal government has regulated it—and other types of leasing—since at least 1968 when it enacted the Truth in Leasing Act, 49 U.S.C. §14704 ("TILA"). Despite the existence of TILA and its controlling regulations, trucking companies continue to prey on truck drivers who merely wish to make an honest living and provide for themselves and their families. As alleged in detail below, Defendants engaged in such abusive practices including, *inter alia*, applying miscellaneous and unknown monthly charges and refusing to return escrow moneys as required by TILA.

2.      The financial exploitation of truck drivers has only worsened since partial deregulation of the industry in the 1980s.[2] It is common for truck drivers to work "not to get 'ahead' but just to make ends meet."[3] Many truck drivers struggle just to bring home even a couple hundred dollars for a week of hard work—and it is not unusual for a trucking company to tell a driver at the end of a week that the driver owes the company money. This is among the things that happened to Mr. Bryant, as alleged in detail below.

3.      Plaintiff brings this action to remedy Defendants' violations of TILA and corresponding Truth-in-Leasing regulations, 49 C.F.R. Part 376 (sometimes, "TILR") and for

---

[1] *See, e.g.*, "RIGGED Forced into debt. Worked past exhaustion. Left with nothing." USA Today, June 17, 2017, https://www.usatoday.com/pages/interactives/news/rigged-forced-into-debt-worked-past-exhaustion-left-with-nothing/ (last visited Aug. 8, 2021); *see also* "How Lease Deals Have Truckers Hauling a Load of Debt," Westword, Mar. 2, 2021, https://www.westword.com/news/truckers-lease-deal-pathways-lawsuit-highway-safety-supply-chain-11907958 (last visited Aug. 8, 2021).

[2] Belzer, Michael H., "Sweatshops on Wheels," Oxford University Press (2000), p.ix.

[3] *Id.* at p.vii.

common law breach of contract during the relevant statutory periods, for which Mr. Bryant, on his own behalf and on behalf of all others similarly situated, seeks damages, restitution, injunctive relief, interest, attorneys' fees and costs, and all other legal and equitable remedies deemed just and proper under United States and applicable state law.

## THE PARTIES

4.      Plaintiff HERBERT BRYANT III is a former driver for Defendants who worked for Defendants in multiple States including but not limited to the State of Illinois.

5.      Plaintiff is informed, believes, and thereon alleges that Plaintiff and other similarly situated truck drivers performed work for Defendants under agreements as described herein that were identical or substantially similar to the agreements between Plaintiff and Defendants and that Plaintiff and others similarly situated performed all, or substantially all, of the obligations imposed on them as a result of those agreements.

6.      Plaintiff brings this action on behalf of himself and similarly situated class of individuals as defined herein.

7.      Plaintiff reserves the right to name additional class representatives.

8.      Plaintiff is informed and believes, and thereon alleges, that Defendant ALL WAYS AUTO TRANSPORT, LLC ("Defendant" or "AWT") is, and at all times relevant hereto was, an Illinois corporation organized and existing under the laws of the State of Illinois and doing business as AW TRANSPORT.

9.      The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants under fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as a DOE is highly responsible in some manner for the events and happenings referred to herein, and legally caused the injuries and damages alleged in this Complaint. Plaintiff will seek leave of the court to amend this Complaint to allege their true names and capacities when ascertained. Defendants, and each of them, were alter egos of each other and/or engaged in an integrated enterprise with each other. Additionally, all of the Defendants were joint employers of Plaintiff.

10.     There exists, and at all times herein mentioned existed, a unity of interest and

2

ownership between the named Defendants, including DOES, such that any corporate individuality and separateness between the named defendants has ceased, and that the named Defendants are alter egos in that the named Defendants effectively operate as a single enterprise, or are mere instrumentalities of one another.

11.     At all material times herein, each Defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining Defendants, and ratified and approved the acts of the other Defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

12.     Whenever reference is made herein to any act, deed, or conduct of "Defendant" or "Defendants" the allegation means that all Defendants, including DOES 1-100, engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendants' ordinary business and affairs. As to the conduct alleged herein, each act was authorized, ratified or directed by Defendants' officers, directors, or managing agents.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1332(d)(2), and 1337.

14.     This Court has personal jurisdiction over Defendants on multiple bases, including that each Defendant: (1) transacted business in the United States and in this District; (2) transacted business with class Members throughout the United States, including those residing in this District; (3) committed substantial acts in furtherance of an unlawful scheme in the United States, including in this District; and (4) agreed to this Court's jurisdiction via written contract entered into with Plaintiff.

15.     This Court has jurisdiction over all causes of action asserted herein, and the amount in controversy exceeds the jurisdictional minimum of this Court.

16.     Venue is proper in this District under 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. §

1391(b), (c), and (d), because each Defendant transacted business, was found, had agents, and/or resided in this District; a substantial part of the events giving rise to Plaintiffs' claims arose in this District; and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

## COMMON FACTUAL ALLEGATIONS

17.     Plaintiff is a former truck driver for Defendants who worked for Defendants in multiple States including but not limited to Illinois within four years prior to the filing of this action.

18.     Plaintiff learned of an employment opportunity for AWT after coming across an online advertisement that promised truck drivers a $2,000 down payment on a truck lease followed by driving assignments whereby Defendant would pay 85% of the gross load receipts for each trip.

19.     Like all other class members, as a condition of working for Defendants, Defendants required Plaintiff to enter into a non-negotiable "Equipment Lease Agreement" (the "Agreement"). The Agreement is a take-it-or-leave-it contract of adhesion. Plaintiff entered into the Agreement on or around September 7, 2017. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

20.     Among other things, the Agreement specified that Plaintiff was to be an "independent contractor" and "owner-operator" of an unidentified truck that was "to be determined," which Plaintiff was to "lease" to AWT.

21.     After signing the Agreement, Plaintiff was instructed by AWT, as a condition of his employment/work relationship, to travel to Houston, Texas in order to pick up a truck from Defendant's affiliate truck leasing company, BUSH TRUCK LEASING, INC. ("BTL"). Plaintiff is informed and believes that BTL has been, at all relevant times, an agent of AWT.

22.      In accordance with AWT's instructions, and with the paperwork provided by AWT, Plaintiff picked up a 2013 Volvo truck from BTL for use with his work for Defendants. BTL required Plaintiff to enter into a separate written agreement to "lease" the truck for an initial payment of $2,500 plus weekly payments of no less than $704.30. The BTL Lease Agreement further provided that Defendant is authorized "to deduct from [Plaintiff's] settlement account

and/or from amounts otherwise payable to [Plaintiff] at each settlement period on behalf of [Plaintiff's] funds necessary to sufficiently satisfy all [] obligations due Bush Truck Leasing, Inc. or its assignee… and to remit all such amounts to Bush Truck Leasing, Inc. or its assignee."

23.     Due to repeated mechanical failures with the Volvo, Plaintiff was required to submit the truck at various repair locations for maintenance. In accordance with the Agreements, the repair shops would bill AWT directly, who would, in turn, deduct amounts from Plaintiff's account. Plaintiff made numerous requests for itemized invoices for the repairs and payments purportedly made in connection therewith on Plaintiff's behalf, but Defendants failed to provide such information.

24.     After numerous mechanical failures of the Volvo, Defendants provided a different truck to Plaintiff in or around October 2018 and entered into a second Equipment Lease Agreement identical to the Agreement in form but identifying the second 2015 International Conventional Sleeper vehicle that Plaintiff was to drive.[4] A true and correct copy of the second Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

25.     Once Plaintiff began working for Defendants, Defendants deducted lease and other expenses from amounts that they paid to Mr. Bryant. The "other expenses" were often unspecified charges without description that were not set forth in the Agreements. For example, Defendants would regularly deduct a "WEEKLY DEDUCTION" of approximately $388.05 from Plaintiff's payment in addition to all other deductions, without providing any information as to what the deduction is for. Plaintiff is informed and believes that nothing in the Agreements provided for such deductions.

26.     Plaintiff is informed and believes that Defendants took such deductions from all class members' accounts in violation of the TILA and TILR and the terms of the Agreements.

27.     Upon the termination of Plaintiff's employment with Defendant, Defendant further failed to return to Plaintiff the escrow balance due to him. Plaintiff is informed and believes that the failure to return all escrow amounts due was a practice of Defendants common to all class members.

---

[4] The form of the September 2017 and October 2018 Equipment Lease Agreements, as applicable to all Class members, are collectively referred to as the "Agreements."

## FEDERAL STATUTORY AND REGULATORY FRAMEWORK

### TILA

28.     The TILA and TILR protect truckers including so-called "owner-operators" from motor carriers' abusive leasing practices. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank (In re Arctic Express Inc.*), 636 F.3d 781, 795 (6th Cir. 2011); *Global Van Lines, Inc. v. ICC*, 627 F.2d 546, 547-48 (D.C. Cir. 1980); Lease and Interchange of Vehicles, 42 Fed. Reg. 59,984 (Nov. 23, 1977). The TILR applies to "equipment"[5] leases between an "authorized carrier"[6] and "owner"[7] The objectives of the TILA and TILR are:

> … to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; … to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and … to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

*In re Arctic Express*, 636 F.3d at 796 (internal quotation marks, alterations omitted); *see also* Lease and Interchange of Vehicles, 43 Fed. Reg. 29,812 (July 11, 1978); *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 367 F. 3d 1108, 1110 (9th Cir. 2004) ("A primary goal of this regulatory scheme is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position.").

29.     "[A]uthorized motor carriers" such as 49 C.F.R. § 376.11(a) may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12. *See* 49 C.F.R. § 376.11(a). The conduct and business practices of authorized motor carriers must comply with the TILR irrespective of whether their written lease agreements satisfy the requirements of the regulations. 49 C.F.R. § 376.12.

---

[5] *See* 49 C.F.R. § 376.2(c) (defining equipment as: "A motor vehicle, straight truck, tractor, semitrailer, full trailer, any combination of these and any other type of equipment used by authorized carriers in the transportation of property for hire.").

[6] *See* 49 C.F.R. § 376.2(a) (defining an authorized carrier as: "A person or persons authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902.").

[7] *See* 49 C.F.R. § 376.2(b) (defining an owner as: "A person (1) to whom title to equipment has been issued, or (2) who, without title, has the right to exclusive use of equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person.").

30.     To protect truckers including owner-operators from motor carriers' abusive business practices, the TILR, 49 C.F.R. § 376.11, provides, that an "authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions: [¶] (a) Lease. There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." The TILR, 49 C.F.R. § 376.12, provides, in part: "the written lease required under § 376.11(a) shall contain the following provisions[,]" which include, in relevant part, the following:

    a.  <u>Parties to Leases</u>. Leases between authorized carriers and truckers including owner-operators[8] "shall be made between the authorized carrier and the owner of the equipment. The lease shall be signed by these parties or by their authorized representatives." 49 C.F.R. § 376.12(a). Regardless of whether such lease agreements are in writing, however, "[t]he required lease provisions shall be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12.[9]

    b.  <u>Copies of Freight Bill or Other Freight Documentation</u>. Leases between authorized carriers and truckers including owner-operators require that "[w]hen a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or

_____

[8] Accordingly, the TILR applies to authorized carriers' conduct and business practices as they may affect and arise out of authorized carriers' relationships with owner-operators who are employees *or* independent contractors. *See Blair v. TransAm Trucking, Inc.* 309 F. Supp. 3d 977, 1020 (2018) (the TILR "was promulgated to protect '*individual owner-operators* due to their weak bargaining position.' To show that TIL applies, an owner-operator does not need to prove they are an 'independent contractor.' Rather, an owner-operator only must establish that '(1) he was an "owner" of the truck and trailer as that term is defined in the regulations; and (2) he "leased" that equipment to defendants.' As it would be possible to own a truck yet still qualify as an 'employee,' the terms 'independent contractors' and 'owner-operators' are not mutually exclusive.") (internal footnoted citations omitted).

[9] Accordingly, authorized carriers' conduct and business practices must comply with the TILA and TILR regardless of whether leases are in writing. *See Bonkowski v. Z Transport, Inc.*, 2004 WL 524723, at *2-3 (N.D. Ill. Mar. 5, 2004) ("Because the agreement was entirely oral, it violated the regulations."); *Shimko v. Jeff Wagner Trucking, LLC*, 2014 WL 7366190, at *4 (W.D.Wis. Dec. 24, 2014) (citing *Bonkowski v. Z Transport, Inc.*, 2004 WL 524723, at *3 (N.D. Ill. Mar. 5, 2004); *see also Luizzi v. Pro Transport, Inc.*, 2013 WL 3968736, at *20 (E.D.N.Y., July 31, 2013) (rejecting argument that noncompliance with § 376.12(b) renders lease unenforceable); *Hunt v. Drielick*, 496 Mich. 366, 852 N.W.2d 562, 569 n. 8 (2014) ("Specifically, 49 C.F.R. § 376.11 and 49 C.F.R. § 376.12 require that if a semi-tractor owner leases its equipment to a carrier, a written lease agreement must be executed[;] . . . . However, the fact that no written lease was entered into in this case does not preclude the trial court on remand from concluding that a lease was in fact entered into. *See Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 701 P.2d 575 (Ct.App.1984) (explaining that "the absence of a written trip lease is legally irrelevant")").

at the time of settlement, a copy of the rated freight bill . . . ." 49 C.F.R. §376.12(g).

c. <u>Charge-back items</u>. Leases between authorized carriers and truckers including owner-operators require, in part, that "[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." 49 C.F.R. §376.12(h). Furthermore, authorized carriers must inform truckers including owner-operators of the latters' entitlements to copies of those documents which are necessary to determine the validity of the charge. *Ibid.*

d. <u>Prohibition on Required Products, Equipment, or Services</u>. Leases between authorized carriers and truckers including owner-operators "shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments." 49 C.F.R. §376.12(i).

e. <u>Escrow Fund Responsibilities</u>. Where escrow fund deposits are required, the lease must clearly specify how the money can be used and the money can only be used for actual obligations incurred by truckers and owner-operators. 49 C.F.R. § 376.12(k)(2), (6). The authorized motor carrier must provide periodic accountings to truckers and owner-operators, and, upon termination of the relationship with the authorized motor carrier, a final accounting reporting all transactions involving the escrow fund. 49 C.F.R. § 376.12(k)(3), (4), (6). The authorized motor carrier must also pay interest to truckers and owner-operators on amounts deposited in escrow on at least a quarterly basis. 49 C.F.R. § 376.12(k)(5). Finally, following termination of the lease relationship, the authorized motor carrier must return all unused escrow funds to truckers and owner-operators within 45 days from the date of termination. 49 C.F.R. §376.12(k)(6).

f. <u>Authorized Motor Carrier's Liability Even Through Its Agents</u>. An authorized motor carrier is obligated "to ensure that [owner-operator drivers] receive all of the rights and benefits … under the leasing regulations…" regardless of whether the lease is between the authorized carrier and the driver or between the authorized carrier and its agent. 49 C.F.R. § 376.12(m).

31.     When Congress abolished the ICC, Congress enabled truckers to enforce the TILA and TILR with a private cause of action against carriers for violating those regulations. *See* 49 U.S.C. § 14704(a); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d 1111, 1113 (9th Cir. 2011). Specifically, 49 U.S.C. § 14704, entitled "Rights and remedies of persons injured by carriers or brokers," provides:

(a)    In General.—

(1) Enforcement of order.—A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board, as applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection. A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

(2) Damages for violations.—A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

## CLASS ACTION ALLEGATIONS

32.    The applicable statute of limitations for the Class is 10 years. Plaintiff alleges that Defendants, in Defendants' capacities as contracting parties under Illinois law, entered into written agreements with Plaintiff and similarly situated truck drivers and then breached those written agreements and/or the implied covenants of good faith and fair dealing by engaging in the acts and omissions described herein, including wrongfully charging or deducting fees or expenses from and withholding monies owed to Plaintiff and others similarly situated from truck drivers' wages earned and due as governed by Illinois common law governing contracts.

33.    Accordingly, Plaintiff asserts his contract claims on behalf of the following class ("Class"):

All former and current truck drivers who performed work for Defendants during the ten years prior to the filing of this action.

34.    Furthermore, 28 U.S.C. § 1658(a) applies a four-year statute of limitations for civil actions arising under federal statutes enacted after December 1, 1990. Therefore, Plaintiff asserts his claim for violation of TILA and TILR on behalf of the following subclass ("TILA Subclass"):

All former and current truck drivers who performed work for Defendants violations during the four years prior to the filing of this action.

35.    Plaintiff alleges that Defendants, in Defendants' capacities as authorized "motor carrier(s)" (49 U.S.C. §§ 13901 and 13902), among other things, failed to enter into valid trucking equipment leases with Plaintiff and other similarly situated truck drivers or otherwise failed to disclose or comply with mandated terms and conditions under leases with Plaintiff and other

similarly situated truck drivers as required under the TILA.

36.     In doing so, Plaintiff alleges, Defendants demanded performance under truck lease agreements that were void *ab initio* under TILA or, even if valid, still unlawfully charged or deducted fees or expenses including fuel costs, toll fees, insurance premiums, and dispatch fees, among others from and withheld monies owed to Plaintiff and others similarly situated from truck drivers' wages earned and due as prohibited by the TILA and the TILR.

37.     This action is appropriately suited for a Class Action because:

a.  The potential class is a significant number, estimated at no less than 300 members. Joinder of all current and former employees individually would be impractical.

b.  This action involves common questions of law and fact to the potential class because the action focuses on the Defendants' systematic course of illegal lease practices, which was applied to Plaintiff and all of Defendants' truck drivers in violation of, *inter alia*, TILA and applicable Illinois law.

c.  The claims of the Plaintiff are typical of the class because Defendants subjected their drivers to the identical violations of, *inter alia*, TILA and applicable Illinois law while systematically subjecting drivers to the same breaches of their agreements and covenants.

d.  Plaintiff is able to fairly and adequately protect the interests of all members of the class because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to them for all services rendered and hours worked.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TRUTH IN LEASING ACT AND TRUTH IN LEASING REGULATIONS
### (Against All Defendants)

38.     Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

39.     The Agreements provided to Plaintiff and TILA Class Members violate numerous provisions of the TILA and TILR.

40.     To help facilitate the interstate and intrastate delivery of freight, Defendants entered into substantively similar and/or identical Agreements with TILA Class Members.

41.     Because the agreements are presented as a single agreement to TILA Class Members, they are properly construed as a single agreement for purposes of determining compliance with TILA.

42.     The agreements purport to lease, on behalf of Defendants, heavy duty trucks and driving services from TILA Class Members.

43.     The Agreements do not conform to the requirements set forth in 49 C.F.R. § 376.12. Among other things, the Agreements:

a.   fail to clearly specify "all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed";

b.   fail to inform Class members of their entitlements to copies of those documents which are necessary to determine the validity of the charge;

c.   fail to prohibit authorized carriers from requiring truckers including owner-operators to purchase any products, equipment or services from the authorized carrier as a condition of entering into the lease;

d.   fail to specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments;

e.   fail to specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill; and

f.   fail to provide for periodic accountings of escrow to truckers and owner-operators or for final accounting reporting all transactions involving the escrow fund upon termination of the relationship.

44.     The conduct and business practices of authorized motor carriers must also comply with the Truth-in-Leasing regulations irrespective of whether or not their written lease agreements satisfy the requirements of the regulations. *See* 49 C.F.R. § 376.12.

11

45. Defendants' conduct does not conform to the requirements set forth in 49 C.F.R. § 376.12. Among other things, Defendants have:

     a. underpaid Class members all monies due;

     b. taken deductions from Class members' settlements without specifying the basis for such deductions;

     c. deducted lease payments from Class members' accounts for the purported purpose of making their lease payments, but has failed to make such lease payments;

     d. provided false accounting to Class members;

     e. failed to provide copies of all receipts, invoices, or other statements in connection with deductions;

     f. required drivers to purchase a lease, equipment, and services from Defendant's agent(s) as a condition of the lease;

     g. failed to give copies of rated freight bills to Class members prior to their trips;

     h. failed to return all escrow funds due;

     i. failed to provide periodic accounting of escrow funds; and

     j. failed to pay required interest on escrow funds.

46. As a result of Defendant's violations of 49 C.F.R. § 376.12, Plaintiff and TILA Class Members were disadvantaged by a lack of transparency, wrongful charges, forced purchases, and conversion of their escrow funds in their contractual relationship with Defendants, resulting in damages.

47. The above violations are mere examples of the written lease violating substantial provisions of the TILA. Moreover, some of the violations stated herein violate multiple sections of the TILA even where only one specific section is cited. On information and belief, discovery is needed to ascertain the full extent of Defendant's violations.

48. As a result of Defendants' conduct, Plaintiff and TILA Class Members have suffered damages.

49.     Plaintiff seeks damages and injunctive relief enjoining Defendants from engaging in such wrongful practices.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
**(Against All Defendants)**

50.     Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

51.     Class members performed work for Defendants under written agreements that were, as set forth in the Agreements.

52.     Plaintiff is informed and believes and thereon alleges that, as stated in the foregoing paragraphs, Defendants breached the Agreements by overcharging Class members for various fees and expenses and failed to return escrow funds.

53.     Plaintiff is further informed and believes that Defendant substantially misconstrued the price of transportation of deliveries made by Class members that included, without limitation, controlling the negotiated price of delivery, unilaterally renegotiating prices so as to underpay Class members, and failed to inform Class members of the true amounts paid by customers in receipt of those deliveries, leading to substantial underpayment for the benefit of Defendants.

54.     No agreement or contract provision authorized the aforementioned underpayment and Plaintiff and Common Law Breach of Contract Class Members performed all, or substantially all, of the obligations imposed on them under their agreements and contracts.

55.     Therefore, Defendants breached the terms of their agreements with Plaintiff and Common Law Breach of Contract Class Members.

56.     Class members have sustained damages as a result of Defendants' breach in an amount to be proven at trial.

57.     Plaintiff seeks damages and injunctive relief enjoining Defendants from engaging in such wrongful practices.

## THIRD CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

58.     Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

59.     Plaintiff and Class Members performed work for Defendants under written agreements, including but not limited to the promises by Defendants to pay Plaintiff and Class Members for each mile driven in the completion of their duties.

60.     Under Illinois law, in every contract or agreement there is an implied promise of good faith and fair dealing in performance of the contract, requiring that each party will not unfairly interfere with the right of any other party to receive the benefits of the contract.

61.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith include, *inter alia*, evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

62.     Defendants have breached the covenant of good faith and fair dealing in the contract through their policies and practices alleged herein. Specifically, Defendants substantially misconstrued the price of transportation of deliveries made by Plaintiff and Class members that included, but was not limited to, controlling the negotiated price of delivery, unilaterally renegotiating prices so as to underpay Plaintiff and Class Members, and failing to inform Plaintiff and Class Members of the true amount paid by customers in receipt of those deliveries, leading to substantial underpayment for the benefit of Defendants. Defendants further failed to comply with requirements implicit in the agreements with Plaintiff and Class Members to comply with all federal law and requirements, including but not limited to requirements of the TILA and TILR.

63.     No agreement or contract provision authorized the aforementioned underpayment and Plaintiff and Class Members performed all, or substantially all, of the obligations imposed on them under their agreements and contracts, nor did any agreement or contract provision authorize the aforementioned violations of the Truth in Leasing Act.

64.     Plaintiff and Class Members have sustained damages as a result of Defendants' breach.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all other persons similarly situated, by his attorneys, respectfully prays for relief against Defendants (including DOES 1 through 100), and each of them, as follows:

A.   For compensatory damages in an amount to be ascertained at trial;

B.   For restitution of all monies due to Plaintiff, including the value of the unlawfully converted tips, as well as disgorged profits from the unfair and unlawful business practices of Defendants;

C.   For preliminary and permanent injunction enjoining Defendants from violating the relevant provisions of the TILA and TILR and breaching the Agreement;

D.   For Actual and/or statutory damages pursuant to the TILA;

E.   For prejudgment interest at the maximum legal rate;

F.   For reasonable attorneys' fees and costs;

G.   For declaratory relief;

H.   For an order requiring and certifying the Class;

I.   For an order appointing Plaintiff as class representative, and Plaintiff's counsel as class counsel; and

J.   For such other and further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: February 18, 2022

*/s/ Katrina Carroll*
Katrina Carroll
LYNCH CARPENTER LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone:      (312) 750-1265
Facsimile:      (312) 212-5919
katrina@lcllp.com

*Local Counsel for Plaintiff and the Putative Class*

**THE KICK LAW FIRM, APC**
(***Pro hac vice* forthcoming**)
Taras Kick (State Bar No. 143379)
(Taras@kicklawfirm.com)
Sam Vahedi (State Bar No. 286660)
(Sam@kicklawfirm.com)
Jeffrey C. Bils (State Bar No. 301629)
(Jeff@kicklawfirm.com)
815 Moraga Drive
Los Angeles, California 90049
Telephone:      (310) 395-2988
Facsimile:      (310) 395-2088

*Lead Counsel for Plaintiff and the Putative Class*