THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERBERT BRYANT III, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>ALL WAYS AUTO TRANSPORT, LLC, et. al.,<br><br>*Defendants*. | No. 1:22-cv-00906<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Herbert Bryant III filed this lawsuit on February 18, 2022, against All Ways Auto Transport, LLC ("AWA") and Defendant Does 1 through 100. (Dkt. 1). Bryant, a former truck driver, contracted with Defendants to deliver cargo on their behalf with trucks leased in his name. Bryant is seeking preliminary and permanent injunctive relief, declaratory relief, damages, and attorneys' fees based on violations of the Truth-in-Leasing-Act ("TILA"), 49 U.S.C. § 14704, and Truth-in-Leasing regulations ("TILR"), 49 C.F.R. § 376.12, breach of contract, and breach of covenant of good faith and fair dealing. (*Id*.). The leasing agreements Bryant entered into with AWA allegedly did not comply with relevant federal regulations, and AWA allegedly withheld compensation from Bryant without justification. Defendant AWA filed this motion to dismiss and strike various allegations in the Complaint on June 12, 2022. (Dkt. 7). For the reasons discussed below, Defendant's Motion to Dismiss [7] is denied in part and granted in part.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pled factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014).

1

Unless otherwise noted, the following factual allegations are taken from Bryant's Complaint (Dkt. 1) and are assumed true for purposes of Defendant's motion to dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Bryant filed copies of the two relevant leasing agreements as exhibits to the Complaint which will be considered part of the pleadings for purposes of considering the motion to dismiss. Fed. R. Civ. P. 10(c); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); (Dkt. 1 Ex. A; Dkt. 1 Ex. B).

Defendant All Ways Auto Transport, LLC, ("AWA") is a trucking company, organized and doing business in the State of Illinois, which contracts with individual truckers to deliver cargo. (Dkt. 1 ¶¶ 8, 17–18). Plaintiff Herbert Bryant III is a former truck driver for AWA. (*Id*. ¶¶ 17–18). Bryant entered into a non-negotiable "Equipment Lease Agreement" with AWA on or about September 7, 2017 ("the First Agreement"). (*Id*. ¶ 19; Dkt. 1 Ex. A). The First Agreement involved a 2013 Volvo truck leased to Bryant by Bush Truck Leasing, Inc. ("BTL"), believed to be an agent of AWA, to be used by Bryant in his work for AWA. (Dkt. 1 ¶ 22). Bryant had the 2013 Volvo truck repaired at numerous repair shops that billed AWA directly, which AWA then deducted from Bryant's account. (*Id*. ¶ 23). On or about October 1, 2018, Bryant entered a second leasing agreement with AWA for a 2015 International Conventional Sleeper vehicle ("the Second Agreement"). (*Id*. ¶ 24; Dkt. 1 Ex. B). The Second Agreement is identical to the First Agreement in form but applies to the new vehicle rather than the 2013 Volvo truck. (Dkt. 1 ¶ 24).

Under both the First Agreement and the Second Agreement (collectively "the Agreements"), AWA deducted expenses from Bryant's pay, including unspecified charges not included in the Agreements. (*Id*. ¶ 25). AWA regularly withheld a "WEEKLY DEDUCTION" totaling approximately $388.05 from Bryant's paycheck in addition to other deductions. (*Id*.).

AWA provided no explanation for the purpose of the "WEEKLY DEDUCTION." (*Id.*). AWA also deducted the cost of repairs for the 2013 Volvo truck from Bryant's pay but did not provide him with itemized invoices for the repairs despite his requests. (*Id.* ¶ 23). Under the terms of the Agreements, AWA maintained funds in an escrow account to pay for Bryant's obligations. (Dkt. 1 Ex. A at 2; Dkt. 1 Ex. B at 2). AWA did not provide Bryant with periodic accountings of escrow funds, nor did AWA return the escrow balance due to Bryant at the termination of his employment. (Dkt. 1 ¶¶ 27, 45).

The Agreements include six clauses particularly relevant to Bryant's claims. First, in Section V, both Agreements specify that "all Payments will be made minus applicable deductions for Escrow, Cargo & Liability Insurance, Advances, Fuel Card Payments, Trailer Rental repairs and any agreed upon damage or other payment." (Dkt. 1 Ex. A at 2; Dkt. 1 Ex. B, at 2). Section VI specifies that:

> [a]ll escrow funds may be held for a period of SIXTY (60) days after termination of this Agreement, to ensure return all [International Fuel Tax Association] quarterly taxes have been filed and all required equipment and paperwork and to insure payment of INDEPENDENT CONTRACTOR'S obligations, **including, but not limited to,** fuel taxes, cargo claims, liability claims, advances, equipment check, fuel card advances or any other operating cost which are the sole responsibility of the INDEPENDENT CONTRACTOR.

(*Id.*) (emphasis added). In Section VI, both Agreements state "[t]he CARRIER shall provide the INDEPENDENT CONTRACTOR with an accounting of any transaction involving the escrow account, or any deductions to the escrow account in a separate ledger sheet, and upon written request of the INDEPENDENT CONTRACTOR." (*Id.*). Section VII dictates:

> [i]n any case where the INDEPENDENT CONTRACTOR has secured an advance of any kind from CARRIER, or if there shall be **any other amounts** due to CARRIER from INDEPENDENT CONTRACTOR, or INDEPENDENT CONTRACTOR's employees or agents, **including, but not limited to,** such items as fuel, lubricants, pallets, load locks, safety equipment, tires, tractor or trailer parts, fines and penalties, operating authorities, licenses, permits, transfer charges,

> turnpike tickets, tolls or any insurance deductions authorized by INDEPENDENT CONTRACTOR, CARRIER shall be authorized to deduct the amount of such advance or other amount due to CARRIER.

(Dkt. 1 Ex. A at 3; Dkt. 1 Ex. B at 3) (emphasis added). Section VII outlines that "CARRIER shall furnish INDEPENDENT CONTRACTOR with a written explanation and itemization of all such deductions." (*Id.*). Section VII also states, "INDEPENDENT CONTRACTOR is not required to purchase or rent any products, equipment, or services from CARRIER as a condition of entering into this Agreement." (*Id.*).

Bryant raises numerous claims related to monetary withholdings by AWA and the sufficiency of the Agreements. First, Bryant alleges violations of the Truth in Leasing Act, 49 U.S.C. § 14704, ("TILA"), and related regulations, 49 C.F.R. § 376.12. (Dkt. 1 ¶¶ 38–49). Second, Bryant alleges breach of contract. (*Id.* ¶¶ 50–57). Third, Bryant alleges breach of covenant of good faith and fair dealing. (*Id.* ¶¶ 58–64). Bryant intends to seek class certification for his contract claims ("Class") and his TILA/TILR claims ("TILA Subclass"). (*Id.* ¶¶ 32–37). Bryant alleges that both the "WEEKLY DEDUCTION" and the failure to return escrow funds were financial losses common to all proposed class members. (*Id.* ¶¶ 26–27). On June 12, 2022, Defendant moved to dismiss the Complaint in its entirety, and to strike certain portions of Bryant's Complaint. (Dkt. 7.).[1]

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[1] Defendant failed to reply to the response from Plaintiff by the deadline of July 6, 2022, or at any point since then.

4

the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

### A. Count I: Truth in Leasing Act ("TILA") Claims

Bryant alleges violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704, and its accompanying regulations ("TILR"), 49 C.F.R. § 376.12, as the first cause of action. (Dkt. 1 ¶¶ 38–49). TILA and TILR provide protections for individual truckers (often called "owner-operators" in the trucking industry) when leasing their trucks to motor carrier companies to haul cargo. (Dkt. 1 ¶ 28). One of the TILA regulatory scheme's "primary goal[s]" is "to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc. (AZ)*, 367 F.3d 1108, 1110 (9th Cir. 2004). TILR's design is "to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; . . . to eliminate or reduce opportunities for skimming and other illegal or inequitable practices [by motor carriers]; and . . . to promote the stability and economic

5

welfare of the independent trucker segment of the motor carrier industry." *In re Arctic Exp. Inc.*, 636 F.3d 781, 796 (6th Cir. 2011) (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp.*, 2000 WL 33711271, at *3 (W.D. Mo. Nov. 3, 2000)). TILA enables owner-operators to bring a private cause of action against carriers to enforce their legal rights under TILA and TILR. 49 U.S.C. § 14704(a); *Mervyn v. Atlas Van Lines, Inc.*, 882 F.3d 680, 682 (7th Cir. 2018).

To state a claim under 49 U.S.C. § 14704(a)(2), Bryant must "allege facts from which [the Court] can plausibly infer that [AWA] violated one or more of the regulations and that [Bryant] was damaged as a result." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 678 (7th Cir. 2022). Here, Bryant alleges AWA violated 49 C.F.R. § 376.12(g), (h), (i), and (k), as well as the general requirement under 49 C.F.R. § 376.12 that "[t]he required lease provisions shall be adhered to and performed by the authorized carrier."

  **a. Charge-backs**

Under § 376.12(h), leases must "clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." 49 C.F.R. § 376.12(h). Section 376.12(h) also requires carriers to provide lessors with "copies of those documents which are necessary to determine the validity of the charge." *Id.*

Bryant alleges AWA violated § 376.12(h) in three ways. First, since the Agreements permit AWA to deduct items "including, but not limited to" a list of specific items, the Agreements do not "clearly specify all items" which may be deducted from an owner-operator's pay, nor do they include "a recitation as to how the amount of each item is to be computed." (Dkt. 1 Ex. A at 3; Ex. B at 3). A list of items "including, but not limited to" specific items does not "clearly specify all items" as required by § 376.12(h). Additionally, AWA allegedly underpaid Bryant by

6

deducting "other expenses" from the settlements paid to him, including a "WEEKLY DEDUCTION" of "approximately $388.05." (Dkt. 1 ¶ 25). Finally, AWA failed to provide Bryant with copies of documentation to assess the validity of these deductions, even though he "made numerous requests for itemized invoices for repairs and payments purportedly made in connection therewith." (*Id*. ¶ 23).

### b. Requirement to Purchase from Carrier

Leases must "specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." 49 C.F.R. § 376.12(i). Bryant alleges the Agreements failed to include such specification, and AWA "required drivers to purchase a lease, equipment, and services from Defendant's agent(s) as a condition of the lease," namely BTL, allegedly an agent of AWA, whom AWA directed Bryant to lease a truck from. (Dkt. 1 ¶¶ 43(c); 45(f); 21).

While the Agreements specify "INDEPENDENT CONTRACTOR is not required to purchase or rent any products, equipment, or services from CARRIER as a condition of entering into this Agreement," Bryant's allegation that AWA instructed him to lease a vehicle through its agent as a condition of the work relationship is sufficient to plausibly claim AWA violated § 376.12(i), or at least violated the general requirement that "required lease provisions shall be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12; (Dkt. 1 Ex. A at 3; Ex. B, at 3).

### c. Escrow Funds and Accountings

Carriers holding escrow funds must provide an accounting of transactions to the lessor by either "clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund" or "providing a separate [monthly] accounting to

7

the lessor of any transactions involving the escrow fund." 49 C.F.R. § 376.12(k). Carriers must also pay interest on the escrow funds on at least a quarterly basis and return escrow funds with a final accounting of escrow deductions. 49 C.F.R. § 376.12(k)(5)–(6). The Agreements violate § 376.12(k)(3) by "fail[ing] to provide for periodic accountings of escrow to truckers and owner-operators or for final accounting reporting all transactions involving the escrow fund upon termination of the relationship." (Dkt. 1 ¶ 43(f)). AWA also allegedly failed to return all due escrow funds, provide a periodic accounting of escrow funds, or pay required interest on the escrow funds. (*Id.* at ¶ 45(h)–(j)).

AWA argues the Agreements do provide for periodic escrow accountings, citing to Section VI of the Agreements, which states: "The CARRIER shall provide the INDEPENDENT CONTRACTOR with an accounting of any transaction involving the escrow account, or any deductions to the escrow account in a separate ledger sheet, and upon written request of the INDEPENDENT CONTRACTOR." (Dkt. 7 at 6, citing Dkt. 1 Ex. A at 2; Dkt. 1 Ex. B at 2). However, again, Bryant's allegations of non-provision of periodic accounting, failure to pay interest on the escrow account, and failure to return funds in escrow are sufficient to allege that AWA violated § 376.12(k) or at a minimum, the general requirement that "required lease provisions shall be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12.

### d. Freight Bills

Under § 376.12(g), the lease must "specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill." 49 C.F.R. § 376.12(g). Bryant alleges the Agreements "fail to specify that the authorized carrier will give the lessor, before or at the time of settlement,

a copy of the rated freight bill." (Dkt. 1 ¶ 43(e)). Bryant also pleads that AWA "failed to give copies of rated freight bills to Class members prior to their trips." (*Id.* ¶ 45(g)).

While the Agreements do not mention providing the lessor with a rated freight bill, Section VII does outline that the "CARRIER shall furnish INDEPENDENT CONTRACTOR with a written explanation and itemization of all such deductions." (Dkt. 7 at 6). However, this language does not in fact "specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill" as required by § 376.12(g).

In sum, Bryant sufficiently pled a claim under 49 C.F.R. § 376.12. Further, Bryant alleges these violations caused harm to him by unlawfully charging him for items not specified in the Agreements and unlawfully converting his escrow funds. (Dkt. 1 ¶ 45). To state a claim, a plaintiff must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting *Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). Because Bryant alleged sufficient facts to plausibly claim violations and damages in the form of unreturned funds, Bryant states a claim for violation of TILA and TILR. AWA's motion to dismiss Count I for failure to state a claim is denied.

e. **Motion to Strike Ad Damnum Paragraphs B and D**

AWA argues restitution and disgorgement are not available remedies under TILA and moves to strike Ad Damnum paragraphs B and D. (Dkt. 7 at 11). The Seventh Circuit has not addressed this issue, and there is a split amongst other circuits. The Ninth and Eleventh Circuits reason, in line with AWA's argument, that the statute explicitly provides for injunctive relief without leaving open other permissible equitable remedies, such as restitution or disgorgement.

*See Owner-Operator Indep. Drivers Ass'n v. Swift Transportation Co.*, 632 F.3d 1111, 1121 (9th Cir. 2011) ("[T]he statute has . . . provided a different scheme of enforcement, listing only injunctive relief to the exclusion of other equitable remedies."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1324 (11th Cir. 2010) ("Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement."). The Sixth Circuit held the opposite, determining that restitution is available to plaintiffs seeking escrow funds from carriers, because escrow funds under § 376.12(k) implicitly create a statutory trust, "paving the way for plaintiffs' action for restitutionary relief." *In re Arctic Exp. Inc.*, 636 F.3d at 797.

The Ninth and Eleventh Circuits persuade this court that the statute of the text prohibits seeking the equitable remedies of disgorgement and restitution under TILA. *See, e.g., Mervyn v. Nelson Westerberg, Inc.*, 2012 WL 6568338, at *4 (N.D. Ill. Dec. 17, 2012) (holding the same); *see also United States v. Costello*, 666 F.3d 1040, 1043 (7th Cir. 2012) ("the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else.") (citation omitted). The statute provides for injunctive relief without inclusion of any other equitable relief. The clearest reading of the statute is that Congress did not intend to permit other equitable remedies under TILA. 49 U.S.C. § 14704(a)(1) ("A person may bring a civil action for injunctive relief for violations."). AWA's motion to strike Ad Damnum paragraphs B and D is granted.

B. **Count II: Breach of Contract**

To sufficiently plead a breach of contract claim under Illinois law, Bryant must allege four elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Robbins v.*

10

*Dream Big Athletics, LLC*, 2019 WL 4596698, at *3 (Ill. App. Ct. Sept. 20, 2019) (citing *Gonzalzles v. American Exp. Credit Corp.*, 733 N.E.2d 345, 351 (Ill. App. Ct. 2000)).

Bryant's Complaint satisfies these elements. First, Bryant alleges a valid and enforceable contract between the parties, as memorialized in the Agreements. (Dkt. 1 ¶ 51; Dkt. 1 Ex. A; Dkt. 1 Ex. B). Second, Bryant alleges he "performed all, or substantially all, of the obligations imposed" by the Agreements. (Dkt. 1 ¶ 54). Third, Bryant alleges AWA "breached the Agreements by overcharging . . . for various fees and expenses and failed to return escrow funds." (*Id.* ¶ 52). Finally, Bryant alleges he suffered damages in the form of underpayment and withheld escrow funds. (*Id.* ¶¶ 53, 56).

AWA argues that Bryant failed to specify which fees and expenses were invalid or a statement of damage amounts for unreturned escrow funds. However, a plaintiff "need not plead all the specific details underlying an alleged breach of contract to state a claim." *Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, 2011 WL 3876947, at *12 (N.D. Ill. Sept. 1, 2011). Defendant's motion to dismiss Count II for failure to state a claim is denied.

### C. Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

Bryant alleges breach of the implied covenant of good faith and fair dealing. "Although the covenant of good faith and fair dealing is used as an aid in construing a contract, it does not form the basis of an independent tort recognized in Illinois." *N. Tr. Co. v. VIII S. Michigan Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995); *see also Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001). Bryant may not allege breach of the implied covenant of good faith and

fair dealing as a separate count in his Complaint. Count III is therefore dismissed, and Bryant is granted leave to reallege this claim in Count II.

### D. Class Action claims

AWA argues Bryant's class action claims must fail because his individual claims cannot be sustained. (Dkt. 7 at 10). Class action claims cannot be filed by class representatives who have no individual claims, because they lack standing and have no "personal stake in the outcome." *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974) (internal citations omitted). Since Bryant's individual claims survive, AWA's motion to dismiss his class action allegations is denied.

### E. Motion to Dismiss Defendant Does 1–100

In a few short paragraphs AWA moves to dismiss or strike Defendant Does 1–100. (Dkt. 7 at 10). AWA claims since Defendant Does 1–100 are not identified in the Agreements, they should be stricken. Plaintiff indicated discovery is needed, and additional defendants may be added as new evidence becomes available, as is entirely appropriate at the pleading stage. AWA then claims under Rule 19, BTL is a necessary party that must be joined in order to proceed. AWA advances no argument for why the Court cannot "accord complete relief" among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). AWA's motion to dismiss or strike the Doe Defendants is denied.

### F. Motion to Strike

The Court may strike "redundant, immaterial, impertinent, or scandalous matter" from a complaint. Fed. R. Civ. P. 12(f). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Motions to strike are generally disfavored, but they may be used to "remove unnecessary clutter" and expedite a case. *Heller*

*Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). AWA must demonstrate that the challenged allegations "are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration" or that they are unduly prejudicial. *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997) (citing *Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*, 1996 WL 68009, at *1 (N.D. Ill. Feb. 14, 1996)).

AWA moves to strike paragraphs one and two as well as footnotes one through nine of the Complaint. (Dkt. 7 at 2–4). AWA argues paragraphs one and two, describing conduct by the trucking industry with cites to newspapers, are immaterial to Defendant's actions. (Dkt. 7 at 3). The first two paragraphs of the Complaint are not "so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration" nor are they unnecessarily prejudicial, especially at the pleading stage. While Bryant characterizes the conduct of the trucking industry as "plagu[ing] the nation's trucking industry," a "modern-day equivalent of indentured servants," "prey[ing] on truck drivers," and "abusive," these allegations are "not so far afield from the scope of the Complaint as to warrant the extraordinary and disfavored relief of striking the allegations." *Noordhof v. Howmedica Osteonics Corp.*, 2019 WL 10301741, at *4 (N.D. Ill. Apr. 8, 2019). These paragraphs provide introductory context and background for Bryant's claims and the regulatory scheme that gives rise to them. Their admissibility at trial need not be determined at the pleadings stage.

AWA also claims footnotes one through three and five through nine are immaterial and "anything but short and plain," and footnote four is redundant. (*Id.* at 3). Bryant's Complaint is sixteen pages long without exhibits. (Dkt. 1). His footnotes take up approximately one page. (Dkt. 1 at 1, 6–8). Footnote four, which AWA alleges is redundant, is one sentence long. Bryant's footnotes are not so lengthy that they violate Rule 8. *See Bennett v. Schmidt*, 153 F.3d 516, 518

(7th Cir. 1998) ("[i]t takes a lot worse than using 12 pages to set out a claim that could have been stated in 6 pages to justify a dismissal under Rule 8(a) . . . [plaintiff's] complaint could be improved, but it is intelligible and gives the defendants notice of the claim for relief."). AWA's motion to strike paragraphs one and two and footnotes one through nine is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [7] is denied in part and granted in part. Count III is dismissed without prejudice. Ad Damnum paragraphs B and D are stricken. Defendant's motion to strike paragraphs one and two as well as footnotes one through nine is denied. Defendant's motion to dismiss Defendant Does 1–100 is denied. Defendant's motion to dismiss Counts I and II is denied.

_____
Virginia M. Kendall
United States District Judge

Date: November 30, 2022